OPINION OF THE COURT
Anthony A. Scarpino, Jr., S.
This discovery proceeding presents a novel question whether an exoneration clause in a power of attorney is enforceable.
Pending before the court is a motion for summary judgment by the administrator of the estate of Frances E. Francis (decedent) against respondent Donald Maloney, as an attorney-in-fact. Petitioner seeks the turn over of decedent’s assets, to set aside a tenancy agreement and for an order compelling respondent to account. Respondent has cross-moved to dismiss the proceeding as time-barred.
Decedent died intestate on November 24, 2002 at the age of 100 years. She was survived by her nephew William Mueller as her sole distributee. Mr. Mueller is also the primary beneficiary under a will signed by decedent on December 10, 1987, a copy of which was filed with the court. At her death, decedent’s estate consisted of a two-family dwelling where she resided with an aide. Respondent and his mother have resided in the first-floor apartment since 1972. Seventeen months before decedent died, respondent transferred her bank accounts using a power of attorney.
*538 On January 12, 2005 petitioner obtained an order to attend against respondent for the purpose of discovering assets which belonged to decedent. Initially, respondent failed to appear. He then moved to dismiss the proceeding. By decision dated September 28, 2005, respondent’s motion was denied and he was directed to appear and be examined. Such examination took place on October 14, 2005. Thereafter, petitioner converted the proceeding for the turn over of the assets and respondent filed his answer. The pending motion for summary judgment was returnable in December 2007.
Respondent opposes thé motion for summary judgment in a short affirmation by his attorney who proposes that it is petitioner’s burden td establish that decedent lacked capacity and that the transfer of her assets was not for her benefit. Additionally, respondent contends that the statute of limitations precludes recovery.
In his answer respondent admits that he drafted the power of attorney (the POA) and on June 12, 2001 he gave it to decedent to sign. Decedent was 98 years old at the time. According to respondent he obtained a power of attorney form off the Internet and read a book in which he learned that “special powers” must be added in order to depart from the authority provided under the General Obligations Law (see General Obligations Law § 5-1503).
The POA is a three-page document wherein respondent is designated the attorney-in-fact. Decedent’s initials are inserted next to item Q (which grants to the attorney-in-fact all of the enumerated powers) followed by a broad power to make gifts, including gifts to the attorney-in-fact, without liability. The POA provides, in part, as follows:
“[flull authority to add any names, including that of my attorney-in-fact or any member of his family, to any banking or brokerage accounts, jointly, In Trust For, etc., for the benefit of those named after my death. Full authority to make gifts in any amounts and at any time to any person, including my attorney-in-fact himself, and/or to transfer by any means funds from any account in my name to any type of account, including to my attorney-in-fact himself, for use and benefit during and after my life. Full authority to make loans and to forgive loans, in any amount and to any person, including my attorney-in-fact. My attorney-in-fact is not *539 required to make my assets produce income or increase the value of my estate. To file any final income tax forms, if necessary. No accounting shall be required of my attorney-in-fact during or after my life. My attorney-in-fact shall not incur any liability to me, my estate, my heirs, successors or assigns or to anyone else for acting or refraining from acting under this document.”
At his examination respondent testified that the day after decedent signed the POA, on June 13, 2001, he went to First Union Bank, removed an “old” power of attorney and changed decedent’s savings and checking accounts totaling some $140,000. Respondent made his mother the beneficiary of the savings account and added himself to the checking account. One month later, in July 2001, respondent closed two certificates of deposit (CDs) decedent held at Chase Manhattan Bank and transferred the funds to an account at First Union. Respondent estimates that the CDs held approximately $100,000. The bank accounts and CDs appear to have constituted the bulk of decedent’s liquid assets.
Three months later, respondent prepared and executed, on behalf of himself and as attorney-in-fact for decedent, a “Lifetime Tenancy Agreement” dated on October 17, 2001. Under the tenancy agreement, respondent grants himself, his mother and Wayne Maloney a lifetime tenancy with joint right of survivorship to “the entire house and property.” Although the agreement does not identify the property to which the tenancy applies, presumably respondent intended it to apply to decedent’s residence. The agreement permits decedent to remain in her apartment for her lifetime and makes her responsible for “all her bills, taxes, etc.” but fails to address how she would pay such bills in view of the transfer of her assets. It also contains what is tantamount to an exoneration provision by making it enforceable even where the “tenants” fail to pay related taxes.
With that background, we turn first to respondent’s motion to dismiss.
The transfer of decedent’s bank accounts together with the tenancy agreement effectively wiped out her estate. Respondent contends that regardless of the validity of the transfers, petitioner may not recover because the three-year statute of limitations for conversion (CPLR 214 [3]) has expired. It is noted that petitioner has moved for leave to amend his petition *540 to add causes of action for unjust enrichment and quasi-contract, both of which have a six-year limitations period. The court need not reach such request as the proceeding is timely.
It is the character of the claim which governs the accrual time for a cause of action. Here, the cause of action arises out of respondent’s breach of his fiduciary duty as an attorney-in-fact. The allegations clearly set forth such a claim. The statute of limitations for an action based upon the breach of a fiduciary duty is six years (Elghanayan v Victory, 192 AD2d 355 [1993]; see also Kaufman v Cohen, 307 AD2d 113 [2003]). Such period does not begin to run until the fiduciary has openly repudiated his obligation or renders an account (Westchester Religious Inst, v Kamerman, 262 AD2d 131, 132 [1999], citing Matter of Barabash, 31 NY2d 76, 80 [1972]; see also Estate of McNamara, NYLJ, Oct. 7, 2003, at 29, col 2).
Respondent has failed to account in his capacity as an attorney-in-fact and until this proceeding was filed did not openly repudiate his obligation as a fiduciary. Accordingly, the proceeding is timely and respondent’s motion to dismiss is denied.
Next for determination is petitioner’s motion for summary judgment for the turn over of decedent’s assets, or the value thereof, to set aside the tenancy agreement and for an order compelling respondent to account.
The party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by offering sufficient evidence to demonstrate the absence of any material issue of fact (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Zarr v Riccio, 180 AD2d 734 [1992]; Estate of McNamara, NYLJ, Oct. 7, 2003, at 29, col 2; Estate of Jurgens, NYLJ, June 26, 2003, at 27, col 6). Where movant satisfies his burden, the opposing party must establish the existence of material issues of fact requiring a trial (Zuckerman v City of New York, 49 NY2d 557 [1980]; Romano v St. Vincent’s Med. Ctr. of Richmond, 178 AD2d 467 [1991]). Mere conclusions, expressions of hope or unsupported allegations or assertions are insufficient to defeat the motion (Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966 [1988]).
The court’s burden on a summary judgment motion is not to resolve issues of fact but merely to determine whether such issues exist (Dyckman v Barrett, 187 AD2d 553 [1992]). Where no factual issues exist, summary judgment may be granted (Matter of Cioffi, 117 AD2d 860 [1986]).
*541 Respondent’s use of the POA is a classic example of how such an instrument may be abused by an attorney-in-fact for his personal benefit. At his deposition respondent admitted that he transferred to himself or his mother virtually all of decedent’s liquid assets and secured a life tenancy in the real property. He used decedent’s assets to pay off his personal credit card debts, to purchase a computer, clothes, CDs, DVDs, whiskey and fund his Pay Pal accounts. According to respondent he does not have any records because after his review of decedent’s bank statements he “[got] rid of them.”
In response to the motion, respondent submits a short affirmation from his attorney who asserts that the broad grant of powers under the POA, the existence of an exoneration clause, and the law in effect at the time of the transfers* are complete defenses to petitioner’s recovery.
There does not appear to be any decision wherein a court has addressed whether a principal may exonerate an attorney-in-fact from liability.
Some 70 years ago, New York enacted Decedent Estate Law § 125 (now EPTL 11-1.7) which prohibits a testator from exonerating a fiduciary from the duty of exercising reasonable care, diligence and prudence. As the court noted in Matter of Stralem (181 Misc 2d 715 [1999]), the statute was the result of the legislature’s concern with an increase in the practice of vesting fiduciaries with unlimited powers and a minimum of obligations which posed a risk to the persons interested in an estate and could serve to defeat the primary duties of ordinary care, diligence and prudence and of absolute impartiality which are of the very essence of a trust. (See also Matter of Allister, 144 Misc 2d 994 [1989]; Matter ofAscher, 175 Misc 943 [1941].)
Although EPTL 11-1.7 is limited to wills, its prohibition has been applied to an exculpatory clause in an inter vivos trust which seeks to relieve a trustee from any and all liability. Such provision may be strictly construed against the trustee, or determined to be void as against public policy (Matter of Scheuer, NYLJ, June 3, 1992, at 23, col 1; Matter of Akin, NYU, Oct. 23, 1989, at 29, col 4; see also Matter of Amaducci, NYLJ, Jan. 12, 1998, at 32, col 3).
*542 With regard to inter vivos trusts, the courts applied the fundamental principle established in the seminal case Meinhard v Salmon (249 NY 458, 464 [1928]), which remains the rule today, that is “[a fiduciary] is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior” (see also Semmler v Naples, 166 AD2d 751 [1990]; Matter of De Belardino, 77 Misc 2d 253, 256 [1974]). More recently, in Matter of Ferrara (7 NY3d 244, 254 [2006]), the Court of Appeals held that an attorney-in-fact is held to the same standard of “utmost good faith and undivided loyalty toward the principal, and must act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing” (citation omitted).
Applying such principles to a power of attorney, the court finds that a clause which seeks to exonerate an attorney-in-fact from any and all liability runs afoul of the spirit of New York’s public policy and the duty of an attorney-in-fact as established under Ferrara. Accordingly, the provision exonerating respondent from any liability is void.
Respondent contends that the “special powers” he added to the POA permitted him to transfer decedent’s property to himself and to prepare and execute the tenancy agreement. In effect, respondent argues that these “special powers” serve as an escape hatch from the requirements of section 5-1503 of the General Obligations Law, an argument the Court of Appeals flatly rejected in Ferrara.
Ferrara makes certain the law in New York, that is, an attorney-in-fact must act in the best interests of the principal. The Court (at 254-255) further found that “[t]he term ‘best interest’ does not include such unqualified generosity to the holder of a power of attorney, especially where the gift virtually impoverishes a donor whose estate plan . . . contradicts any desire to benefit the recipient of the gift.”
In the instant matter, respondent has failed to proffer any evidence that decedent derived even a scintilla of benefit from his transfers. Nor has respondent presented proof of decedent’s intent to make gifts of her property to him or his mother (see Gruen v Gruen, 68 NY2d 48 [1986]; Matter of Clinton, 1 Misc 3d 913[A], 2004 NY Slip Op 50056[U] [2004]). Clearly, the only beneficiaries of the tenancy agreement were respondent and his family. Petitioner has established that respondent disregarded his fiduciary duty to decedent and utilized the POA for his personal gain.
*543 Based upon the foregoing, petitioner’s motion for summary-judgment to set aside all transfers made by respondent pursuant to the POA and the tenancy agreement is granted.
Petitioner’s right to recovery having been determined, his request to compel an accounting requires consideration. The question whether a principal may relieve an attorney-in-fact from the duty to account does not appear to have been previously decided.
Fundamental to the fiduciary relationship is the duty to account. Such duty extends to an attorney-in-fact acting pursuant to a power of attorney (Matter of Gershenoff, 2 Misc 3d 847 [2003], affd 17 AD3d 243 [1st Dept 2005]; Estate of Shea, NYLJ, June 3, 2003, at 20, col 2). The duty is absolute (Matter of Stein-berg, 153 Mise 339 [1934]) and may not be waived by a testator CMatter of Brush, 46 Mise 2d 277 [1965]; Matter of Lubin, 143 Misc 2d 121 [1989]). Moreover, an absolute waiver contained in an inter vivos trust has also been found to be void as against public policy (see Matter of Malasky, 290 AD2d 631 [2002]; Matter of Kassover, 124 Misc 2d 630 [1984]). To hold otherwise would leave beneficiaries defenseless.
Absent enforceability of the duty to account, neither a principal nor the beneficiaries of her estate would be able to protect their interests leaving an abusive attorney-in-fact in a position to act without fear of any adverse consequence. Based upon the foregoing, the court finds that the exoneration of respondent from his duty to account as attorney-in-fact is void as against public policy. Accordingly, respondent is directed to file his account within 45 days of receipt of a decree and order to be settled herein.
In the event respondent fails to file his account within the time and manner directed, the court shall make an order setting the matter down for a trial date at which time petitioner may take and state an account of decedent’s assets prior to June 13, 2001 (SCPA 2205). Upon establishing decedent’s ownership of the assets petitioner shall be entitled to recover from respondent the property or value thereof.

 Respondent’s argument that the lower court decision in Matter of Salvation Army v Ferrara (3 Mise 3d 944 [2004], affd 22 AD3d 578 [2005], revd 3 NY3d 244 [2006]) shields him from liability is disingenuous at best given that the decision was rendered two years after he transferred decedent’s assets.